## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

MELISSA REETZ, Individually and on Behalf of
All Others Similarly Situated,

                Plaintiff,

    v.

CENTRAL PORTFOLIO CONTROL, INC.,

                Defendant.

Case No.: 20-cv-281

**CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

## INTRODUCTION

1.      This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2.      The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3.      Plaintiff Melissa Reetz is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.      Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt incurred for personal, family, or household purposes, namely medical debts.

5.      Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301, in that the debt Defendants sought to collect from Plaintiff arose from a consumer transaction with an agreement to defer payment.

6.      Defendant Central Portfolio Control, Inc. ("CPC") is a foreign business corporation with its primary offices located at 10249 Yellow Circle Drive, Suite 200, Minnetonka, MN 55343.

7.      CPC is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8.      CPC is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

9.      CPC is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103.

## FACTS

10.     On or around April 16, 2019, CPC mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "Absolute Resolutions Investment, LLC," with an "*Original Creditor*" listed as "WEBANK AS SERVICED BY AVANT, LLC." A copy of such letter is attached to this Complaint as Exhibit A.

11.     Upon information and belief, the alleged debt referenced in Exhibit A was incurred as a result of an unsecured personal loan, the proceeds of which were used exclusively for personal, family, and household purposes.

12.     Upon information and belief, Exhibit A is a form letter, generated by a computer, and with the information specific to Plaintiff inserted by the computer.

13.     Upon information and belief, Exhibit A is a form debt collection letter, used by CPC to attempt to collect alleged debts.

14.     Upon information and belief, Exhibit A is the first written communication CPC mailed to Plaintiff regarding this alleged debt.

2

15.    <u>Exhibit A</u> includes a statement which largely reflects the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires debt collectors provide alleged debtors along with, or within five days of, the initial communication:

Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion of it, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgement or verification. If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

16.    Additionally, <u>Exhibit A</u> includes the following representation:



*Balance Due:* $8,422.64

17.    <u>Exhibit A</u> thus states that the "Balance Due" associated with Plaintiff's alleged debt was $8,422.64 as of the date of the letter.

18.    Upon information and belief, as of April 16, 2019, the date of <u>Exhibit A</u>, the amount stated as the "Balance Due" represented the entire amount of Plaintiff's alleged debt, which, as of such date, had not actually been accelerated pursuant to Wisconsin law.

19.    Wis. Stat. § 425.105(1) provides:

A merchant may not accelerate the maturity of a consumer credit transaction, commence any action except as provided in s. 425.205 (6), or demand or take possession of collateral or goods subject to a consumer lease other than by accepting a voluntary surrender thereof (s. 425.204), unless the merchant believes the customer to be in default (s. 425.103), and then only upon the expiration of 15 days after a notice is given pursuant to s. 425.104 if the customer has the right to cure under this section.

20.    Wis. Stat. § 425.104 provides:

(1)   A merchant who believes that a customer is in default may give the customer written notice of the alleged default and, if applicable, of the customer's right to cure any such default (s. 425.105).

(2) Any notice given under this section shall contain the name, address and telephone number of the creditor, a brief identification of the consumer credit transaction, a statement of the nature of the alleged default and a clear statement of the total payment, including an itemization of any delinquency charges, or other performance necessary to cure the alleged default, the exact date by which

the amount must be paid or performance tendered and the name, address and telephone number of the person to whom any payment must be made, if other than the creditor.

21.    Upon information and belief, neither CPC, "WEBBANK," "AVANT, LLC," nor any other entity ever provided Plaintiff with a notice of right to cure her alleged debt pursuant to Wis. Stat. §§ 425.104 and 425.105.

22.    As of April 16, 2019, the date of Exhibit A, CPC thus lacked the legal authority to demand the total balance of the amount of Plaintiff's alleged debt and sought to collect an amount in excess of what CPC and the creditor were legally entitled to collect.

23.    Representing the entire balance of Plaintiff's alleged debt has been accelerated when only a portion of such debt is owing is false, deceptive, misleading, and unconscionable. *See* FTC Staff Commentary, 53 Fed. Reg. 50097, 50106 ("A debt collector may not ... falsely assert that the debt has matured or that it is immediately due and payable, when it is not."); *see also Machnik v. RSI Enters.*, 2017 U.S. Dist. LEXIS 160772, at *6 (E.D. Wis. Sept. 29, 2017) ("'owing' an amount is distinguishable from the amount 'due.' ").

24.    Indeed, a tradeline associated with "AVANT" appearing on Plaintiff's TransUnion Credit Report shows the account associated with Plaintiff's as having a "Past Due" amount which always only a portion of the balance. A copy of excerpted pages of Plaintiff's credit report showing the relevant tradeline is attached to the complaint as Exhibit B.

25.    Additionally, on or around April 16, 2019, Gurstel mailed a debt collection letter to Plaintiff regarding the same alleged debt. A copy of such letter is attached to this Complaint as Exhibit B.

26.    The second page of Exhibit B is entitled "NOTICE OF RIGHT TO CURE DEFAULT" and includes the following representations:

You may cure the default on this account by paying $4,782.96 on or before September 14, 2019. The payment should be made to Gurstel Law Firm, P.C. at 6681 Country Club Drive, Minneapolis, MN 55427. Checks or money orders should be made payable to Gurstel Law Firm, P.C. Payments may be mailed, made by telephone at 877-344-4002, or made online at www.gurstel.com. Any payment should include our file number provided above.

27.    Exhibit B thus indicates that as of July 31, 2019, the date of the letter (which proceeds the date of Exhibit A by over three months), Plaintiff's alleged debt had not yet been accelerated, and that Plaintiff could avoid the acceleration of her alleged debt by tendering a payment of $4,782.96 on or before September 14, 2019.

28.    Plaintiff was confused and misled by Exhibit A.

29.    The unsophisticated consumer would be confused and misled by Exhibits A.

30.    Moreover, CPC mailed Exhibit A to Plaintiff in a "window envelope" – an envelope containing transparent, "glassine" windows displaying Plaintiff's name and address and CPC's return address.

31.    Also printed on Exhibit A, immediately below CPC's return address and in bold italic font, is the language, "*Personal & Confidential*".

32.    The "*Personal & Confidential*" language was visible through the glassine window. It appears as follows:

PO Box 1111
Charlotte, NC 28201
*Personal & Confidential*

33.    Plaintiff opened the envelope containing Exhibit A. but did not retain the envelope, which contained the glassine window through which the "*Personal & Confidential*" language was visible.

34.    The FDCPA, 15 U.S.C. § 1692f, generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

35.    15 U.S.C. § 1692f(8) expressly prohibits:

(8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

36.    Like 15 U.S.C. § 1692f(8), Wis. Stat. § 427.104(1)(e) prohibits debt collectors from disclosing "information affecting the customer's reputation, whether or not for credit worthiness, with knowledge or reason to know that the other person does not have a legitimate business need for the information."

37.    The Seventh Circuit recently held that the plain language of 15 U.S.C. § 1692f(8) prohibits debt collectors from printing *any* extraneous text in a way that it is visible on an envelope containing a dunning letter. *Preston v. Midland Credit Mgmt.*, No. 18-3119, 2020 U.S. App. LEXIS 1775 *11 (7th Cir. Jan. 21, 2020).

38.    *Preston* addressed a dunning letter in an envelope containing the language "TIME SENSITIVE DOCUMENT." *Id.* at *1.

39.    The Seventh Circuit held that any extraneous language visible on an envelope containing a debt collection letter violates 15 U.S.C. § 1692f(8) as a matter of law. *Id.* at 11:

The first sentence of § 1692f prohibits debt collectors from using unfair or unconscionable means to collect a debt. That prohibition is then followed by a specific list of conduct that violates the section. Among those acts specifically listed is the use of "any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer ... except that a debt collector may use his business name" under prescribed circumstances. 15 U.S.C. § 1692f(8). On its face, the prohibition is clear: use of any language or symbol on an envelope, except for the debt collector's name (if it does not indicate that the collector is in the business of debt collection) and the debt collector's address, violates subsection (8).

*Id.* at 11.

6

40.    In *Preston*, the Seventh Circuit expressly rejected the "benign language exception" followed in some other circuits, holding that Congress created a bright-line rule:

> The statutory language [of § 1692f(8)] does, in fact, prohibit debt collectors from sending communications to consumers in envelopes bearing symbols that are indicative of debt collection. The language of the statute simply draws a clear line to ensure that consumers' rights are not lost in the interpretation of more subtle language. …
>
> In providing certainty, this provision furthers the FDCPA's overall purpose of "eliminat[ing] abusive debt collection practices by debt collectors" and "insur[ing] that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."
>
> In sum, the meaning of § 1692f(8) is clear: When a debt collector communicates with consumers through the mails, it may not use any language or symbol on the envelope except for its business name or address, as long as the name does not indicate that he is in the debt collection business. Turning to the facts here, there is no question that the language "TIME SENSITIVE DOCUMENT" appears on the envelope enclosing a communication to a consumer. It is equally apparent that the language at issue does not fall within the itemized exception set forth in subsection (8): It is not Midland's name nor its address. The inclusion of this phrase thus violates § 1692f(8), and the district court erred in dismissing the claim set forth in Count I of Mr. Preston's complaint.

*Id.* at *15-18; *cf. Goswami v. American Collections Enterprise, Inc.*, 377 F.3d 488 (5th Cir. 2004); *Strand v. Diversified Collection Service, Inc.*, 380 F.3d 316 (8th Cir. 2004).

41.    As in *Preston*, the "***Personal & Confidential***" language on <u>Exhibit A</u> violates the plain language of 15 U.S.C. § 1692f(8). *Preston*, 2020 U.S. App. LEXIS 1775 at *11.

42.    There is no artificial distinction between language printed directly on an envelope itself and language printed on the dunning letter that is visible through the envelope's glassine window.  The purpose of 15 U.S.C. § 1692f(8) is to prohibit the disclosure of information to third parties.  Indeed, the "TIME SENSITIVE DOCUMENT" at issue in *Preston* was actually printed on an internal envelope that was itself visible through the glassine window of the

7

envelope that actually contained the postage. *Preston*, 2020 U.S. App. LEXIS 1775, at \*3; *see also Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303-04 (3d Cir. 2014) (disclosure through window envelope "implicates a core concern animating the FDPCA—the invasion of privacy."); 15 U.S.C. § 1692c(b) (prohibiting debt communication with third parties other than those specified in the statute).

43.    Further, it is not difficult for a debt collector to comply with 15 U.S.C. § 1692f(8). Debt collectors must simply refrain from printing extraneous information on the envelopes or allowing such information to show through the glassine windows of envelopes.

### *The FDCPA*

44.    The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp. Solutions*, 2018 U.S. Dist. LEXIS 50016, \*12, 2018 WL 1513043 (E.D. Wis. March 27, 2018); *Pogorzelski v. Messerli & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 \*9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at \*6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist.

LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618,

623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

45.     Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

46.     Misrepresentations of the character, amount or legal status of any debt, injure or risk injury to interests expressly protected by Congress in the FDCPA. *See Degroot v. Client Servs.,* 2020 U.S. Dist. LEXIS 6677 (E.D. Wis. Jan. 15, 2020) ("[A]n informational injury can be concrete when the plaintiff is entitled to receive and review substantive information.")*; Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt., Inc.*, 18-cv-1484 (E.D. Wis. August 9, 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*,

2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

47.     15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

48.     15 U.S.C. § 1692e(2)(a) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt.

49.     15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

50.     15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

51.     15 U.S.C. § 1692f(1) specifically prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

52.     15 U.S.C. § 1692f(8) specifically prohibits "Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business."

53.     15 U.S.C. § 1692g(a) states:

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall … send the consumer a written notice containing—

(1) the amount of the debt;

### *The WCA*

54.     The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

55.     The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 **n.**15, 596 N.W.2d 786 (1999) (citations omitted).

56.     To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

57.     "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives."  *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983).  Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

58.     To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

59.     The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides

injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

60. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

61. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*; *see also, Schmitz v. Valentine & Kebartas, LLC*, No. 18-cv-15, 2019 U.S. Dist. LEXIS 209489, at *6 (E.D. Wis. Dec. 5, 2019).

62. Wis. Stat. § 427.104(1)(e) states that a debt collector may not: "Disclose or threaten to disclose to a person other than the customer or the customer's spouse information affecting the customer's reputation, whether or not for credit worthiness, with knowledge or reason to know that the other person does not have a legitimate business need for the information. This paragraph does not prohibit the disclosure to another person of information permitted to be disclosed to that person by statute."

63. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

64.    Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct … in such a manner as can reasonably be expected to threaten or harass the customer."

65.    Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

## COUNT I - FDCPA

66.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

67.    By representing that the entire balance of Plaintiff's alleged debt was due to the creditor before Plaintiff was sent a notice of right to cure her alleged debt, Exhibit A misrepresents the amount, character, and legal status of such debt and seeks to collect an amount in excess of what is permitted under Wisconsin law.

68.    Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692f, 1692f(1), and 1692g(a)(1).

## COUNT II – WCA

69.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

70.    By representing that the entire balance of Plaintiff's alleged debt was due to the creditor before Plaintiff was sent a notice of right to cure her alleged debt, Exhibit A threatens to take action which could not legally be taken.

71.    Defendant violated Wis. Stat. §§ 425.105, 427.104(1)(g), 427.104(1)(h), and 427.104(1)(j).

## COUNT III – FDCPA

72.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

73.    Exhibit A contains extraneous text, visible on the outside of the envelope through the glassine window, which states: "***Personal & Confidential***."

74.    The use of such extraneous text on an envelope containing a dunning letter, or visible on the front of the envelope through a glassine window, violates 15 U.S.C. § 1692f(8) as a matter of law. *Preston*, 2020 U.S. App. LEXIS 1775 *15-18.

75.    Defendant violated 15 U.S.C. §§ 1692f and 1692f(8).

## CLASS ALLEGATIONS

76.    Plaintiff brings this action on behalf of a class, consisting of: (a) all natural persons in the State of Wisconsin (b) who were sent a collection letters by Defendant CPC in the form of Exhibit A to the complaint in this action, (c) seeking to collect a debt owed to "Absolute Resolutions Investment, Inc.," with an original creditor listed as "WEBANK AS SERVICED BY AVANT, LLC," (d) between March 26, 2019 and March 26, 2020, inclusive, and (e) such letter was not returned by the postal service. Class I is brought against Defendant CPC.

77.    The class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of each Class.

78.    There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Exhibit A violates the FDCPA.

79.    Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

15

80.    Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

81.    A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

82.    Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a)    actual damages;

(b)    statutory damages;

(c)    injunctive relief;

(d)    attorneys' fees, litigation expenses and costs of suit; and

(e)    such other or further relief as the Court deems proper.

Dated: March 26, 2020

**ADEMI & O'REILLY, LLP**

By:    /s/ Jesse Fruchter
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com